Matter of Megan UU. v Phillip UU. (2021 NY Slip Op 02572)





Matter of Megan UU. v Phillip UU.


2021 NY Slip Op 02572


Decided on April 29, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:April 29, 2021

529733
[*1]In the Matter of Megan UU., Appellant,
v
Phillip UU., Respondent. (Proceeding No. 1.)
In the Matter of Phillip UU., Respondent,
v
Megan UU., Appellant. (Proceeding No. 2.)

Calendar Date:March 9, 2021

Before:Garry, P.J., Lynch, Clark, Pritzker and Colangelo, JJ.

Rural Law Center of New York, Castleton (Keith F. Schockmel of counsel), for appellant.
Legal Aid Society of Northeastern New York, Inc., Saratoga Springs (Joanna S. Davis of counsel), for respondent.
Jessica H. Vinson, Glens Falls, attorney for the child.



Clark, J.
Appeal from an order of the Family Court of Warren County (Kershko, J.), entered June 27, 2019, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the parties' child.
Megan UU. (hereinafter the mother) and Phillip UU. (hereinafter the father) are the parents of a child (born in 2013). In February 2019, following the parents' separation, the mother commenced the first of these Family Ct Act article 6 proceedings seeking joint legal and primary physical custody of the child.[FN1] The following month, in March 2019, the father commenced the second of these proceedings, seeking joint legal and primary physical custody, as well as permission to move from Warren County to Monroe County with the child. Following a fact-finding hearing and a Lincoln hearing, Family Court granted the parents joint legal custody and, determining that the child's best interests would be served by moving to Monroe County with the father, granted the father primary physical custody and the mother parenting time every other weekend and during the child's school breaks. The mother appeals, solely arguing that the determination to grant the father primary physical custody is not supported by a sound and substantial basis in the record.[FN2]
The dispositive inquiry in an initial custody determination is the best interests of the child, which requires an evaluation of various factors, such as each parent's past performance, fitness and ability to maintain a stable home environment and provide for the child's overall well-being, as well as the parents' respective willingness to foster a positive relationship between the child and the other parent (see Matter of Lorimer v Lorimer, 167 AD3d 1263, 1264 [2018], lv dismissed and denied 33 NY3d 1040 [2019]; Matter of Lawton v Lawton, 136 AD3d 1168, 1168-1169 [2016]). Where, as here, a parent seeks to relocate with the child and an initial custody determination has yet to be rendered, Family Court is not required to strictly apply the Tropea relocation factors (see Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1272 [2018]; Matter of Finkle v Scholl, 140 AD3d 1290, 1291 [2016]; Matter of Ames v Ames, 97 AD3d 914, 915 [2012], lv denied 20 NY3d 852 [2012]). Nevertheless, "the parent's 'decision to reside in a distant locale is a very important factor among the constellation of factors to be considered in arriving at a best interests determination, particularly where there is evidence that it would detrimentally affect the other parent's relationship with the child'" (Matter of Eldad LL. v Dannai MM., 155 AD3d 1336, 1339 [2017], quoting Matter of Bush v Lopez, 125 AD3d 1150, 1150 [2015]). In light of Family Court's superior position to evaluate the testimony and assess witness credibility, we defer to Family Court's credibility determinations and factual findings, and we will not disturb Family Court's custody determination if it is supported by a sound and substantial [*2]basis in the record (see Matter of Damian R. v Lydia S., 182 AD3d 650, 651 [2020]; Matter of Patricia RR. v Daniel SS., 172 AD3d 1471, 1472 [2019]).
The record evidence demonstrated, without a doubt, that both the mother and the father are loving, devoted and involved parents, each of whom have the child's best interests at heart. At the time of these proceedings, the parents had recently separated, following a roughly 21-year relationship, and they were each dealing with the significant mental and emotional toll of the loss of their marriage. Additionally, not long after the parents' separation, the father — who is a pastor in the United Methodist Church — was informed that he was being transferred from his parish in Warren County to a parish in Monroe County.
The father testified that he was guaranteed employment as a pastor through the age of 72 and that, regardless of the parish to which he was assigned, his employment provided him with flexible work hours, a salary, parsonage and health benefits. He stated that his assignment to a particular parish was at the sole discretion of the Bishop and that his continued employment as a pastor in the United Methodist Church was contingent upon him accepting his new assignment in Monroe County. The father testified that his assignment in Monroe County came with a parsonage that consisted of a six-bedroom home close to where the child would attend school if she were permitted to move with him. The evidence established that the child's maternal grandparents, as well as the parents' goddaughter, live in Monroe County. The father acknowledged the mental and emotional impact that the end of his marriage had on him, the mother and the child. He testified that, to cope with the circumstances, he and the child were separately engaged in therapy and that he had made arrangements for the child to continue therapy in Monroe County in the event that she relocated with him. Through his testimony, the father exhibited a willingness to foster a positive relationship between the mother and the child, stating that the mother and the child could Facetime daily and offering to transport the child to and from the mother's parenting time.
As for the mother, the evidence demonstrated that, having been a stay-at-home parent, she had served as the child's primary caretaker throughout the child's life. However, as established by the proof, the mother had a particularly difficult time coping with the breakdown of her marriage, which, as she described, also resulted in the loss of her identity as the pastor's wife, as well as her home in the parsonage provided by the church, and left her faced with the daunting prospect of finding employment and obtaining financial independence. The evidence demonstrated that, in the immediate aftermath of the parents' separation, the mother made a series of poor choices, including perpetrating an act of domestic violence against the father, violating the resulting order of protection[*3], excessively consuming alcohol and disparaging the father on social media and other outlets. Although the evidence demonstrated that the mother was addressing her mental health issues and participating in an alcohol treatment program at the time of the fact-finding hearing, Family Court fairly observed that the mother was "just starting her journey of forgiveness and recovery." Additionally, at the time of the hearing, the mother had yet to establish suitable and stable living arrangements for her and the child, and the evidence demonstrated that she did not yet have the ability to care for herself and the child financially. Upon consideration of all of the foregoing, as well as other record evidence, we find that a sound and substantial basis exists in the record to support Family Court's determination that the child's best interests were served by granting the father primary physical custody and allowing him to relocate with the child to Monroe County (see Matter of Holland v Klingbeil, 118 AD3d 1077, 1078-1079 [2014]).
Garry, P.J., Lynch, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Prior to the commencement of the instant proceedings, the father filed a family offense petition against the mother. That petition was resolved during the pendency of these proceedings, with the mother consenting, without any admission, to the entry of a one-year, refrain-from order of protection in favor of the father.

Footnote 2: Like the father, the attorney for the child disagrees and seeks an affirmance of Family Court's order.